UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLENN LACEDRA, | ) |
| | ) |
|    Petitioner, | ) |
| | )   Civil Case No.  23-cv-12855 |
| v. | )   Criminal Case No. 20-cr-10003-NMG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|    Respondent. | ) |

## GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255

The Government moves for summary dismissal of the 28 U.S.C. § 2255 Petition (Doc. 309, "Petition" or "Motion") filed by Petitioner Glenn Lacedra. Lacedra raises four claims in his petition: 1) That his conviction under 18 U.S.C. § 922(g)(1) violates the equal protection clause; 2) that he was punished as if he pled guilty to multiple counts of 18 U.S.C. § 922(g)(1); 3) that his counsel was ineffective because she failed to raise a constitutional challenge to his conviction under 18 U.S.C. § 922(g)(1); and 4) that the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), rendered his conviction under 18 U.S.C. § 922(g)(1) unconstitutional.  Grounds one, three, and four boil down to whether the defendant's conviction is unconstitutional following the Supreme Court's decision in *Bruen*.  If his conviction is constitutional, then it does not violate the equal protection clause and his counsel was not ineffective in raising a frivolous claim prior to his guilty plea.  Ground two is a frivolous claim based on the plain reading of the defendant's plea agreement and agreed statement of facts. For the reasons discussed below, Lacedra's petition is procedurally barred and meritless. Therefore, the Court should dismiss his petition.

1

## BACKGROUND

### Procedural History

On January 8, 2020, a federal grand jury in the District of Massachusetts charged Lacedra with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1) and aiding and abetting, in violation of 18 U.S.C. § 2. Doc 1. The indictment lists the firearms that the defendant illegally possessed and aided his co-defendant in illegally possessing. *Id*. On August 27, 2020, Lacedra pled guilty to the indictment pursuant to a plea agreement. Doc. 79. On October 12, 2023, he was sentenced to 19 months' incarceration followed by two years of supervised release. Doc. 300. Lacedra did not file a notice of appeal or a direct appeal from his conviction or sentence. Lacedra has since completed his sentence of incarceration and is currently serving his term of supervised release.

### General Principles

Title 28 U.S.C. § 2255 sets forth four potential bases upon which a federal prisoner may seek relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A petitioner bears the burden to make a case for § 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (citing *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980)). It is also the petitioner's burden to show entitlement to an evidentiary hearing. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). Where a court is already familiar with the defendant, it "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *Id*.

To obtain an evidentiary hearing, "a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." *David*, 134 F.3d at 478. The First Circuit has "cautioned that a habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are 'vague, conclusory, or palpably incredible.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "This is true, ... even if the record does not conclusively and expressly belie the claim." *David*, 134 F.3d at 478 (internal quotation marks and alterations omitted). The fact that a petitioner is *pro se* does not change that calculus. *Id.*

While the government asserts that an evidentiary hearing is unnecessary in this matter, trial counsel for the defendant is available, should the Court require her testimony regarding the defendant's ineffective assistance claim. Counsel for the defendant declined to meet with or provide attorney-client communications with the government despite the defendant's waiver of attorney-client privilege. Counsel indicated she would comply with any Court order compelling her to produce information to the Court or government. However, as discussed above, a further evidentiary hearing is unnecessary and unwarranted.

**The *Bruen* Decision**

The Supreme Court ruled in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022), that the Second Amendment protects the right of "ordinary, law- abiding citizens" to "carry a handgun for self-defense outside the home." 597 U.S. at 9-10. Accordingly, the Supreme Court struck down a New York law that required residents to demonstrate "proper cause" to obtain a license to carry a handgun outside the home because that law "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 7, 71.

In holding that "ordinary, law-abiding citizens" are afforded the right under the Second Amendment to "carry a handgun for self-defense outside the home," 597 U.S. at 9-10, *Bruen* rejected the "two-step" Second Amendment framework adopted by most courts of appeals, which "combine[d] history with means-end scrutiny." 597 U.S. at 17. Under the first step, lower courts considered whether the challenged law regulated activity within "the original scope of the right based on its historical meaning." *Id.* at 18. If so, courts proceeded to the second step, which involved the application of either strict scrutiny (for laws burdening the "core" right to self-defense in the home) or intermediate scrutiny (for all other laws). *Id.*

*Bruen* observed that "[s]tep one of the predominant framework is broadly consistent" with the Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), "which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19. But the Court "decline[d] to adopt" the second step of the court of appeals' framework, holding that its prior Second Amendment decisions "do not support applying means-end scrutiny in the Second Amendment context." *Id.* at 17-19. Instead, the Court explained, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. When a regulation infringes on such presumptively protected conduct, "[t]he government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* At 24. *Bruen* emphasized that this "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id.* at 30.

Applying this standard, the Court determined that "ordinary, law-abiding, adult citizens" like petitioners are "part of 'the people' whom the Second Amendment protects." *Id.* at 31-32. After an extensive inquiry into the "Anglo-American history of public carry" restrictions, the

4

Court concluded that New York had "not met [its] burden to identify an American tradition justifying the State's proper-cause requirement." *Id.* at 70.

## ARGUMENT

**Defendant's constitutional claim is procedurally barred and substantively meritless.**

Lacedra argues that the Supreme Court's decision in *Bruen* rendered 18 U.S.C. § 922(g)(1) unconstitutional. Lacedra, however, failed to argue prior to conviction or on direct appeal that § 922(g)(1) is unconstitutional, which bars him from raising the claim in a collateral proceeding.

A "collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). Under the longstanding "procedural default" rule, failure to raise a claim on direct appeal precludes collateral relief except in exceptional circumstances. *Bartolomeo v. United States*, 960 F.3d 34, 42-43 (1st Cir. 2020). In such cases, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). The Supreme Court has made clear that "cause" is measured by a stringent standard of diligence. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 753 (1991) ("cause" is "something external to the petitioner" that "cannot be fairly attributed to him" . . . "[a]ttorney ignorance or inadvertence is not 'cause'"). In addition, a showing of prejudice must be made along with the adequate showing of cause. *Reed v. Farley*, 512 U.S. 339, 358 (1994). In order to show prejudice, the petitioner must show a reasonable probability that the result below would have been different had the claimed errors, which were procedurally defaulted, not occurred. *Strickler v. Greene*, 527 U.S. 263, 289-90 (1999). If a defendant fails to establish "cause" and "prejudice" to excuse a procedural default, he can obtain collateral review of his constitutional claim only by

demonstrating that the constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623 (internal citation omitted); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *accord Berthoff v. United States*, 308 F.3d 124, 127-28 (1st Cir. 2002) ("[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence.").

**Lacedra has not established "cause."**

Lacedra does not attempt to argue cause for his failure to raise a constitutional challenge to § 922(g)(1) on direct appeal. This is understandable, even if disqualifying, given that no meritorious "cause" exists. Two common causes of procedural default – futility and ineffective assistance – are not present here.

The Supreme Court has stated that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (quotation marks omitted). And although a claim that is so "novel that its legal basis [wa]s not reasonably available to counsel" at the time of appeal can constitute "cause" to excuse a procedural default, *see Reed v. Ross*, 468 U.S. 1, 16-17 (1984), a text-and-history-based Second Amendment challenge to a federal firearms law does not meet that standard. Such a claim is not "novel" simply because *Bruen* recognized a "new rule" for retroactivity purposes. Instead, to demonstrate "cause" sufficient to overcome procedural default, a "new retroactive decision" must also have announced a rule that was such a "'clear break with the past'" that "an attorney representing the defendant would not reasonably have had the tools for presenting the claim." *Hargrave v. Dugger*, 832 F.2d 1528, 1531 (11th Cir. 1987) (quoting *Reed*, 468 U.S. at 17).

6

The *Bruen* test was not novel. The First Circuit rejected a constitutional challenge to Section 922(g)(1) in *United States v. Torres-Rosario*, recognizing the Supreme Court's clear statements that its Second Amendment jurisprudence in *Heller and McDonald* "did not cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons." 658 F.3d 110, 112-13 (1st Cir. 2011) (quoting *McDonald*, 561 U.S. at 786), *cert. denied*, 565 U.S. 1271 (2012); *see also United States v. Booker*, 644 F.3d 12, 22-23 (1st Cir. 2011) (upholding Section 922(g)(9) against constitutional challenge as "fit[ting] comfortably among the categories of regulations that *Heller* suggested would be 'presumptively lawful'"); *United States v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009) (upholding Section 922(x)(2)(A)). The First Circuit noted that "[a]ll of the circuits to face the issue post *Heller* have rejected blanket challenges to felon in possession laws." *Torres-Rosario*, 658 F.3d at 113 (collecting post-*Heller*, pre-*Bruen* cases). Thus, despite the unlikelihood that such a claim would be successful, a constitutional challenge to § 922(g)(1) on text and history grounds was readily available to Lacedra at the time of his conviction.

Nor can Lacedra establish attorney error that would constitute "cause" for his procedural default. "It is well settled that '[a]ttorney error short of ineffective assistance of counsel ... does not constitute cause and will not excuse a procedural default.'" *Magee v. Harshbarger*, 16 F.3d 469, 472 n.5 (1st Cir. 1994) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). Ineffective assistance adequate to establish "cause" for the procedural default of a constitutional claim must be proven in accordance with the principles set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Field v. Hallett*, 37 F.4th 8, 17 (1st Cir. 2022). As demonstrated in *United States v. Turner*, 124 F.4th 69 (1st Cir. 2024), the First Circuit found no good cause for failing to move to dismiss a felon-in-possession charge prior to conviction and did not consider the merits of his claim on appeal. Lacedra has not established

cause for his procedural default and cannot show ineffective assistance for failing to raise a meritless motion to dismiss.

**Lacedra has not established "prejudice."**

Lacedra also cannot establish the requisite prejudice. He cannot show that he is entitled to relief under *Bruen*. Section 922(g)(1) does not restrict the right of ordinary, law-abiding citizens to bear arms for self-defense, the concern in *Bruen* and its predecessors. Instead, Section 922(g)(1) only prevents those found to have committed serious crimes from acquiring firearms. To the extent *Bruen* requires the government to show that Section 922(g)(1) is consistent with historical tradition, that burden is met. *See United States v. Malik Parsons*, 731 F.Supp.3d 101 (D. Mass. 2024) (Gorton J.).

First, the Supreme Court's language in *Bruen* and *Heller*, which was not overruled by *Bruen*, indicates that felon dispossession statutes are valid under the Second Amendment. In *Heller*, the Supreme Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. 554 U.S. at 635. *Heller* clarified that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. And it said that "nothing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id.* at 626-627 & n.26.

Similarly, in *Bruen*, the Supreme Court held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." 597 U.S. at 10. *Bruen* struck down a New York law that required residents to demonstrate a "proper cause" to obtain a license to carry a handgun outside the home because the law "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 11, 71.

8

Importantly, *Bruen* does not question *Heller's* statements about longstanding prohibitions, such as the possession of firearms by felons. For example, Justice Alito explained in concurrence that *Bruen* does not "disturb[] anything that [the Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id*. at 72 (Alito, J., concurring). Justice Kavanaugh emphasized that "the Second Amendment allows a 'variety' of gun regulations" and reiterated *Heller's* statement about not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 82 (Kavanaugh, J., concurring). Thus, language from *Bruen* and *Heller* indicate that § 922(g)(1) is still valid under the Second Amendment.

Moreover, Second Amendment rights are "not unlimited." *Heller*, 554 U.S. at 626. "[T]he Second Amendment, like the First and Fourth Amendments, codified a pre- existing right," neither "granted by the Constitution" nor "dependent upon that instrument for its existence." *Id.* at 592. Thus, the right to bear arms is "enshrined with the scope [it was] understood to have when the people adopted [it]." *Id.* at 634-635.

The Second Amendment "'elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense." *Bruen*, 597 U.S. at 26, *quoting Heller*, 554 U.S. at 635. That interest and the Second Amendment generally, however, do not restrict "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626-627 & n.26; *see also McDonald*, 561 U.S. at 786 (2010) (repeating *Heller*'s "assurances" that governments may, consistent with the Second Amendment, prohibit felons and the mentally ill from possessing arms). These groups of people are excluded from the Second Amendment's protection because the Amendment codified a "right," belonging to "law-abiding, responsible citizens." *Heller*, 554 U.S. at 635; *see also Bruen*, 597 U.S. at 9 (describing the "right of an

9

ordinary, law- abiding citizen to possess a handgun" both publicly and in the home "for self-defense").

Throughout *Bruen*, including in its concurring opinions, the Supreme Court repeatedly described the Second Amendment right as belonging only to "law-abiding citizens." *See Bruen*, 597 U.S. at 8, 30, 38, 60, 71; *see also id.* at 74, 79 (Alito, J., concurring); *id.* at 79 (Kavanaugh, J., joined by Roberts, C.J., concurring). In applying the framework it announced in *Bruen*, the Supreme Court addressed whether petitioners were "ordinary, law-abiding adult citizens" in the section of its opinion (III.A) addressing the Second Amendment's textual scope, *see Bruen*, 597 U.S. at 31-33; not the later section (III.B) addressing historical tradition. It further noted that the two key metrics for assessing whether firearms regulations comply with the Second Amendment are "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29; *see also Wrenn v. District of Columbia*, 864 F.3d 650, 663 (D.C. Cir. 2017) (suggesting laws comply with Heller if they "leave responsible, law- abiding citizens some reasonable means of exercising" the right to keep and bear arms); *but see United States v. Rahimi*, 61 F.4th 443, 452 (5th Cir. 2023) (concluding the phrase "law-abiding, responsible citizens" was mere "shorthand," and that all members of the "political community," including lawbreakers, have a presumptive right to bear arms).

*Bruen* took specific care to clarify that nothing in the opinion was meant to cast doubt on the legality of the "shall-issue" licensing regimes then in place in 43 states that included background checks and other "narrow, objective and definite" requirements "designed to ensure only that those bearing arms in the jurisdiction are in fact 'law- abiding, responsible citizens.'" *Bruen*, 597 U.S. at 38 n.9 (quoting *Heller*, 554 U.S. at 635); *see also id.* at 78 (Kavanaugh, J., concurring). By indicating that these regimes remain broadly constitutional (unless abused through "lengthy wait times ... or exorbitant fees [that] deny ordinary citizens their right to

10

public carry," *see id.* at 38 n.9), the Court reinforced that the Second Amendment's protections do not extend to people who are not law-abiding. Otherwise, each of the 43 "shall-issue" regimes could survive only if all of their many objective disqualifying criteria survive a case-by-case, historical inquiry. Such exacting scrutiny is flatly contrary to the Supreme Court's express declaration that it was casting no doubt on these regimes.

A conclusion that the Second Amendment's text covers only law-abiding citizens is also consistent with a host of pre-*Bruen* appellate court decisions. For example, *Medina v. Whitaker*, 913 F.3d 152, 157-158 (D.C. Cir. 2019), rejected a nonviolent felon's "as applied" challenge to the federal felon in possession statute. To determine the "public understanding" of the Second Amendment at the time of ratification, the D.C. Circuit considered evidence that the founders understood the right to bear arms to exclude "those who were not (or could not be) virtuous members of the community." *Id.* at 158-159. The court of appeals held that felons—violent or not—"are not among the law-abiding, responsible citizens entitled to the protections of the Second Amendment." *Id.* at 154; *accord United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (holding that "felons are categorically different from the individuals who have a fundamental right to bear arms").

Courts have reasoned similarly for other groups classified as irresponsible or non-law-abiding. For instance, *United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011), rejected a challenge to 18 U.S.C. § 922(g)(8), which prohibits gun possession by people subject to domestic violence restraining orders. Relying on *Heller*'s description of the right to bear arms as protecting law-abiding citizens, the Eighth Circuit observed that the Supreme Court most likely viewed restrictions on gun possession by felons and the mentally ill "as presumptively lawful because they do not infringe on the Second Amendment right." *Id.* at 1183. This rendered Section 922(g)(8) "consistent with a common-law tradition that the right to bear arms

11

is limited to peaceable or virtuous citizens." *Id.* at 1184; *see also United States v. Carpio-Leon*, 701 F.3d 974, 979 (4th Cir. 2012) (refusing to apply Second Amendment to illegal aliens "because illegal aliens are not law-abiding members of the political community"). In light of the foregoing, Lacedra simply has not established prejudice; he has made no showing that *Bruen* entitles him to relief from his conviction or sentence.

Section 922(g)(1) is also consistent with the nation's historical tradition of firearms regulation. By the time of the Second Amendment's ratification in 1791, there was a robust tradition of legislatures exercising broad authority to "categorically disqualif[y] people from possessing firearms based on a judgment that certain individuals were untrustworthy parties to the nation's social compact." *Range v. Attorney General*, 53 F.4th 262, 274, *rev'd en banc*, 69 F.4th 96 (3d Cir. 2023)); *see also United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (considering Range panel's historical inquiry). Compelling evidence from the constitutional ratification debates confirms that, in light of this longstanding tradition of analogous regulation, the founders also understood that the precise type of regulation at issue in this case is constitutional: "legislatures were understood to have the authority and broad discretion to decide when disobedience with the law was sufficiently grave to exclude even a non- violent offender from the people entitled to keep and bear arms." *Range*, 53 F.4th at 279.

**Lacedra cannot show "actual innocence."**

Lacedra also cannot establish that he is actually innocent after *Bruen*. *Bruen* does not hold § 922(g)(1) to be unconstitutional, and Supreme Court dicta has repeatedly indicated that such restrictions on the possession of firearms by felons are valid. *See Bruen, supra; Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786 (repeating the assurances in Heller that it does not "cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'"). The First Circuit is "'bound by the Supreme

12

Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement.'" *Cuevas v. United States*, 778 F.3d 267, 272–73 (1st Cir. 2015) (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir.1991)). Moreover, *Bruen* did not overrule First Circuit case law expressly finding that § 922(g)(1) is valid. *Torres-Rosario*, 658 F.3d at 112-13.

**<u>Lacedra knowingly pled guilty to the indictment, charging him with multiple firearms.</u>**

The defendant complains that he was sentenced for his possession of multiple firearms, when he thought he was convicted of possessing one firearm. This claim is frivolous and contradicted by the record. The defendant agreed to plead guilty to possession of <u>firearms</u> and ammunition. Plea Agreement, Doc. 79. The agreed statement of facts, signed by the defendant, emphasizes that he agreed that "Bailey and I had the four guns." Doc. 79 at 8. The defendant further pled to the indictment, which charged all four firearms in the body of the indictment. Doc. 1. The defendant's allegation that he was punished for more than what he pled to is mere buyer's remorse at best. As such, his § 2255 petition is meritless and should be denied.

## I.     CONCLUSION

For the reasons above, the Court should dismiss or deny Lacedra's § 2255 petition.

                                  Respectfully submitted,

                                  LEAH B. FOLEY
                                  United States Attorney

Date: May 30, 2025                By:    */s/ Philip C. Cheng*
                                                  Philip C. Cheng
                                                  Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). A copy will be mailed to the defendant at his last known address and a copy will be forwarded to the U.S. Probation Office to facilitate service.

Date: May 30, 2025                                     */s/ Philip C. Cheng*
                                                       Philip C. Cheng
                                                       Assistant U.S. Attorney