United States District Court
District of Massachusetts

|  |  |
|---|---|
| Glenn Lacedra, | ) |
| | ) |
| Petitioner, | )   Civil Action No. |
| | )   23-12855-NMG |
| v. | ) |
| | )   Criminal Action No. |
| United States, | )   20-10003-NMG |
| | ) |
| Respondent. | ) |
| | ) |

MEMORANDUM & ORDER

GORTON, J.

Petitioner, Glenn Lacedra ("petitioner"), acting pro se moves to vacate his sentence pursuant to 28 U.S.C. §2255, alleging that his conviction for being a felon in possession of a firearm under 18 U.S.C. §922(g)(1) is unconstitutional and that his trial counsel was ineffective.  The government now opposes that petition.  For the reasons set forth below, the motion will be denied and the petition will be dismissed.

I. **Background**

In January, 2020, petitioner was indicted for possession of a firearm in violation of 18 U.S.C. §922(g)(1), which prohibits any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year," and thus is a felon, from possessing a firearm.  Petitioner's status as a felon results, among other things, from his previous convictions for malicious destruction of property by means of explosives,

- 1 -

possession of an unlawfully made destructive device and possession of an unregistered destructive device. In the events leading up to this case, petitioner also attempted to exchange his unlawfully possessed firearms for illegal narcotics.

Later in 2020, petitioner entered a plea agreement in a case pending in another session of this Court and was sentenced to 19 months of incarceration and two years of supervised release. Petitioner did not appeal his sentence and has since been released from prison. He is presently serving his term of supervised release.

In November, 2023, petitioner moved pro se to vacate his sentence pursuant to 28 U.S.C. §2255.[1] In his petition, he contends that his conviction under 18 U.S.C. §922(g)(1) violated the Second and Fourteenth Amendments to the United States Constitution and that his trial counsel was ineffective for failing to raise those constitutional challenges. Petitioner also contends that he was wrongly punished as if he had pled guilty to multiple counts of violating the subject statute but, because he accepted responsibility for the possession of "four guns" in his plea agreement, that claim is deemed waived. The government opposes the petition to vacate and now asks this

---

[1] The considerable delay between the filing of his motion to vacate and the issuance of this Memorandum & Order emanates from the Court's entry of a stay and the subsequent filing of a motion to withdraw by defendant's appointed counsel.

Court to dismiss it as procedurally barred and substantively meritless.

## II. Legal Standard

To present a viable §2255 habeas petition, a petitioner must demonstrate that his sentence was imposed 1) in violation of the Constitution, 2) by a court that lacked jurisdiction or 3) in excess of the maximum authorized by law or 4) that his sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). The burden is on petitioner to proffer "exceptional circumstances" that that make the need for redress "evident." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).

This Court reviews requests to dismiss habeas petitions "according to the same principles" applied in other civil cases under Fed. R. Civ. P. 12(b)(6). Walsh v. Boncher, 652 F. Supp. 3d 161, 164 (D. Mass. 2023). Accordingly, a habeas petition must state a plausible claim for relief to survive a motion to dismiss. Levine v. U.S. Dep't of Fed. Bureau of Prisons, No. 20-cv-11833-ADB, 2021 WL 681689, at *1-*2 (D. Mass. Feb. 22, 2021) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see Delgado v. Dennehy, 503 F. Supp. 2d 411, 413 (D. Mass. 2007) (recognizing that the standard for a motion to dismiss under Rule 12(b)(6) is "not inconsistent with the habeas rules").

When a habeas petition is filed pro se, however, the Court will construe its allegations "liberally" in favor of the

petitioner. <u>United States</u> v. <u>Ciampi</u>, 419 F.3d 20, 24 (1st Cir.
2005).  As part of a §2255 proceeding, a petitioner is not
"automatically entitled" to a hearing unless he proffers more
than "generalities" or "hints" that a constitutional violation
"lurks in the wings" of his case. <u>David</u>, 134 F.3d at 478 (citing
<u>Machibroda</u> v. <u>United States</u>, 368 U.S. 487, 495 (1962)).

## III. Analysis

Although neither petitioner nor the government address the
issue, the Court must, at the outset, determine whether
petitioner's constitutional claim is a facial challenge,
asserting that a statute is invalid in its entirety, or an as-
applied challenge, contending that a statute is unconstitutional
only as applied to one party's circumstance. <u>Wash. State Grange</u>
v. <u>Wash. State Republican Party</u>, 552 U.S. 442, 449-50 (2008);
<u>Ayotte</u> v. <u>Planned Parenthood of N. New Eng.</u>, 546 U.S. 320, 328-
30 (2006).  In this case, petitioner contends that "[his]
conviction" under 18 U.S.C. §922(g)(1) is constitutionally
invalid.  He therefore presents an "as-applied challenge."  As
such, the Court need only determine that his conviction pursuant
to §922(g)(1) is constitutional as applied to his case in order
to adjudicate his petition.

### A. Second Amendment Standard

Petitioner's primary constitutional claim is that
§922(g)(1) violates the Second Amendment which provides that the

- 4 -

right to "keep and bear arms shall not be infringed." U.S.
Const. amend. II.   In District of Columbia v. Heller, the United
States Supreme Court ("the Supreme Court") clarified that the
Second Amendment "guarantee[s] the individual right to possess
and carry weapons in case of confrontation." 554 U.S. 570, 592
(2008).   The Second Amendment does not, however, convey a right
to use "any weapon whatsoever in any manner whatsoever and for
whatever purpose." Id. at 626.   Under Heller, the government
can, in some circumstances, lawfully impose limitations on the
right to bear arms. Id. at 627.   Two years after that decision,
in McDonald v. City of Chicago, the Court reaffirmed that
holding and clarified that Heller also applies to the states
pursuant to the due process clause of the Fourteenth Amendment.
561 U.S. 742, 767 (2010).

Following Heller and McDonald, the First Circuit Court of
Appeals ("the First Circuit") in United States v. Torres-Rosario
faced and expressly rejected the assertion that 18 U.S.C.
§922(g)(1), the statute under which petitioner was convicted, is
an unlawful restriction on the Second Amendment right to bear
arms. 658 F.3d 110, 112 (1st Cir. 2011); see United States v.
Booker, 644 F.3d 12, 23 (1st Cir. 2011) ("[T]he Second Amendment
permits categorical regulation of gun possession by classes of
persons--e.g., felons . . . ."); see also United States v. Rene
E., 583 F.3d 8, 12 (1st Cir. 2009) (observing that Heller "left

intact" laws that prohibit possession of firearms by felons).
Assuming Torres-Rosario remains good law, the Court is bound to
conclude that petitioner's constitutional claim is untenable.

Since the First Circuit decided Torres-Rosario, however,
the Supreme Court has rendered two landmark decisions clarifying
the scope of Second Amendment rights, N.Y. State Rifle & Pistol
Ass'n v. Bruen, 597 U.S. 1 (2022), and United States v. Rahimi,
602 U.S. 680 (2024), and the First Circuit has not yet had the
opportunity to reconsider the merits of a Second Amendment
challenge to §922(g)(1) in light of those decisions, cf. United
States v. Langston, 110 F.4th 408 (1st Cir.), cert. denied, 145
S. Ct. 581 (2024) (questioning the validity of §922(g)(1) as a
"serious constitutional claim" but declining to review that
issue de novo because defendant had not preserved his claim for
appeal). Accordingly, the issue before this Court is whether
the intervening decisions in Bruen and Rahimi altered the
holding of Torres-Rosario.

### 1. Historical Test Under Bruen

The Bruen decision represents a rejection of the "means-
ends framework" that courts of appeals developed following
Heller and McDonald. Post-Heller Second Amendment challenges
were evaluated by looking first to the history of the Second
Amendment and then to the burden that the regulation at issue
placed on individuals. See, e.g., Worman v. Healey, 922 F.3d 26,

38 (1st Cir. 2019). According to Bruen, that two-step test was one step too many. Id. at 19. A proper application of the Second Amendment necessitates a test rooted exclusively in the law's "historical tradition," as the Court had indicated in both Heller and McDonald. Id. at 33; see also Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 43 (1st Cir. 2024).

Under the historical test articulated in Bruen, the burden is on the government to "justify its regulation." Bruen, 597 U.S. at 20, 24. Because the Second Amendment codified "a pre-existing right" that the United States "inherited from our English ancestors," a regulation is justified if it comports with the "historical tradition" of Anglo-American firearm laws. Id. Only then can a court conclude that an individual's conduct "falls outside the Second Amendment's unqualified command" against firearm regulation. Id. at 23 (quotations omitted). When a case implicates "unprecedented societal concerns or dramatic technological changes," however, the Court recognized that "a more nuanced approach" may be necessary. Id. at 27.

### 2. Historical Test Under Rahimi

The Supreme Court decision in Rahimi, rendered after the filing of petitioner's motion to vacate, clarifies the historical tradition test under Bruen. In Rahimi, the Court reiterated that if a contemporary law restricting gun ownership applies a similar framework to laws that were in place when the

- 7 -

Second Amendment was adopted, it is a "a strong indicator" that the law is constitutional. Id. at 692. The firearm regulation at issue need not share a "historical twin," however, so long as the regulation comports with the traditional "principles underlying the Second Amendment." Id.

Rahimi further elucidates the history of the Second Amendment by discussing the English Bill of Rights which "has long been understood to be the predecessor to our Second Amendment." Heller, 553 U.S. at 593. In relevant part, the Bill of Rights secured the right of English subjects to be "[a]rm[ed] for their [d]efence" 1 Wm. & Mary c. 2 (1688). The Bill of Rights did not, however, enact an unfettered right to be armed. Instead, it authorized restrictions on that right "by [l]aw." Id. Regulations on firearms that postdate the English Bill of Rights include prohibitions on the carrying of weapons to affray (i.e., intentionally frighten or terrorize) others, which were also enforced in colonial America, and surety laws that preemptively disarmed those determined to pose a threat of violence to the community. See Rahimi, 602 U.S. at 693-96 (citing 4 W. Blackstone, Commentaries *145-46, *148-50).

Applying that history, the Court in Rahimi rejected a facial challenge to 18 U.S.C. §922(g)(8), a different subsection of the same statute under which petitioner was convicted. Because §922(g) requires a specific determination that an

- 8 -

individual poses a threat to others, via a judicial restraining
order, the Supreme Court upheld the validity of §922(g)(8) under
the Second Amendment. Id. at 699-700.  Unlike other laws that
the Court previously overturned, §922(g)(8) applies only to a
limited class of persons, cf. Heller, 554 U.S. at 636
(invaliding regulation that posed an effective bar on owning
handguns), and presumes that an individual retains a right to
bear arms until a judicial determination of domestic abuse
dictates otherwise, cf. Bruen, 597 at 55-60 (striking down a
regulation that effectively presumed individuals did not have a
right to bear arms until they could prove otherwise to the state
government).

Rahimi also reaffirms that laws restricting "the possession
of firearms by felons" are "presumptively lawful." Rahimi, 602
U.S. at 699.  That conclusion echoes what the Court had
indicated both in Heller, 554 U.S. at 620, 627 n.26 (stressing
that the Second Amendment only protects "bearing arms for a
lawful purpose" and that firearm bans for felons are
"presumptively lawful" (quotations omitted)), and McDonald, 561
U.S. at 786 (clarifying that that nothing in its in decision
abrogates the "longstanding regulatory measures as prohibition
on the possession of firearms by felons" (quotations omitted)),
and formed the primary basis of the First Circuit's decision in
Torres-Rosario, 658 F.3d at 113 (citing Heller, 554 U.S. at 627

- 9 -

n.26); see also Lewis v. United States, 445 U.S. 55, 65 n.8
(1980) (intimating that restricting a felon's right to possess
firearms is not "constitutionally suspect" (citing United States
v. Miller, 307 U.S. 174, 178 (1939)). The precedent upon which
the First Circuit decided Torres-Rosario thus remains good law.
See United States v. Belin, No. 21-CR-10040-RWZ, 2023 WL
2354900, at *1 (D. Mass. Mar. 2, 2023) ("[T]he First Circuit's
rejection of a constitutional challenge to §922(g)(1) remains
controlling precedent." (citing Torres-Rosario, 658 F.3d at
112)).

**B. Application to §922(g)(8)**

In light of Torres-Rosario and subsequent Supreme Court
precedent, the Court finds that, as applied to petitioner, his
conviction does not contravene the Second Amendment. As applied
to this case, the history of the Second Amendment yields the
same common-sense conclusion that the Supreme Court reached in
Rahimi with respect to domestic abusers: those who pose credible
threats of violence to others, such as felons, can lawfully be
disarmed. See Rahimi, 602 U.S. at 698.

Just as with §922(g)(8) at issue in Rahimi and the
historical laws that preceded it, the crime for which petitioner
was convicted under §922(g)(1) applies to individuals who pose a
threat to others, namely those who previously committed serious
crimes, and restricts such person's ability to possess firearms

to mitigate the risk that they will commit future acts of violence. See id. at 698-99.  Unlike those laws that the Supreme Court has found to be unlawful, §922(g)(1) further restricts firearm use only for a discrete group, felons, without jeopardizing the rights of gun ownership for the public at large. See id. (distinguishing a restriction on gun possession for domestic abusers from firearm laws restricting all citizens).

### 1. Relevant History

Historical procedures that sought to disarm those who posed a risk of violence, such as surety laws, offer a meaningfully relevant historical analogue to §922(g)(1).  The historical justification behind such laws, to "mitigate demonstrated threats of physical violence," supports a tradition of disarming convicted felons, such as petitioner, whose conduct reveals a violent past. Id.; see Lawrence Rosenthal, The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control, 92 Wash. U.L. Rev. 1187, 1239 (2015); Carlton F. W. Larson, Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1377 (2009)).  Although procedures such as sureties are not identical to §922(g)(1), and indeed a ban on felons owning firearms dates only from 1938, see Pub. L. No. 75-785, §§ 1(6), 2(f), 52 Stat. 1250, 1250-51 (1938), only an historical

analogue, not a twin, is necessary under <u>Rahimi</u> to conclude that a firearm regulation comports with the historical tradition, <u>see</u> <u>Rahimi</u>, 602 U.S. at 691.  Because the Second Amendment is not a "law trapped in amber," it permits more than just firearm regulations identical to those enforced in 1791. <u>Id</u>.

To be sure, the relevance §922(g)(1) to the goal of preventing firearm ownership by those who pose a danger of misuse is not self-evident.  Unlike §922(g)(8), which requires a judicial determination that the defendant "represents a credible threat to the physical safety" of another, §922(g)(1) necessitates only that the defendant has previously been convicted of a felony, i.e., a crime punishable by more than one year of imprisonment.  Such a felony could, of course, be the result violent past acts that render the individual a clear threat to the public if he were permitted to be armed but it could equally encompass crimes unrelated to violence whose perpetrators likely pose no threat to public safety.  Moreover, any attempt to insert language into the Constitution that would have limited the right of criminals to bear arms were summarily rejected, <u>see</u> 1 Jonathan Elliot, <u>The Debates in the Several State Conventions on the Adoption of the Federal Constitution as Recommended by the General Convention at Philadelphia in 1787</u>, at 326 (2d ed. 1891); 2 Bernard Schwartz, <u>The Bill of Rights: A Documentary History</u> 662, 665 (1971), casting doubt on the

- 12 -

historical tradition of disarming an individual judged guilty of a felony but who poses no threat of violence to the community.

That distinction is not material to this case, however, where petitioner raises only an as-applied constitutional challenge to §922(g)(1). As the First Circuit in Torres-Rosario recognized, some felonies may be "so tame and technical" that they do not "indicate potential violence," and thus §922(g)(1) cannot be used as "the basis for applying a categorical ban" on firearm ownership but when a defendant has been convicted of prior felonies involving violence, his challenge to the ban under §922(g)(1) is without merit. 658 F.3d at 113.

The same holds true in this case. Petitioner has been previously convicted of a litany of dangerous felonies, including malicious destruction of property by means of explosives, possession of an unlawfully made destructive device and possession of an unregistered destructive device and he has also attempted to barter unlawful firearms for narcotics. It is therefore beyond cavil that excluding petitioner from possessing firearms pursuant to §922(g)(1) is predicated upon a specific judicial finding that he poses a credible threat of future violence to others because of his felony convictions. See United States v. Ortiz, No. CR 22-10257-NMG, 2024 WL 3257186, at *2 (D. Mass. July 1, 2024) (rejecting as-applied challenges to §922(g)(1) because defendant's convictions for drug trafficking,

- 13 -

a crime "notoriously linked to violence," offered a clear
indicum of his "heightened risks to society"); cf. Range v.
Attorney General, 124 F.4th 218, 232 (3rd Cir. 2024) (en banc)
(declaring that §922(g)(1) is unconstitutional under Rahimi
where defendant's only conviction was for the nonviolent felony
of making a false statement in order to obtain food stamps).
Finally, contrary to petitioner's assertion, his ban on firearm
ownership is not immutable.  If the Attorney General determines
his risk of violence has abated, petitioner's rights can be
restored. See 18 U.S.C. §925(c) (authorizing the United States
Attorney General to restore a felon's firearm rights if he is
deemed unlikely to "act in a manner dangerous to public
safety").

### 2. Persuasive Precedent

Other sessions of this Court following Bruen have, without
exception, rejected similar challenges to §922(g)(1), see, e.g.,
United States v. Davidson, No. 4:23-CR-40011-MRG, 2024 WL
5202753, at *1 (D. Mass. Dec. 23, 2024); United States v.
Florentino, 2023 WL 7036314, at *2 (D. Mass. Oct. 26, 2023);
United States v. McNulty, 684 F. Supp. 3d 14, 21 (D. Mass.
2023); Belin, 2023 WL 2354900, at *2, as has every other district
in this circuit, see, e.g., United States v. Johnson, No. 2:22-
CR-00038-JAW-1, 2024 WL 5220723, at *3 (D. Me. Dec. 26, 2024);
United States v. Levasseur, No. 1:22-CR-00155-LEW, 2024 WL

- 14 -

3358221, at *3 (D. Me. July 9, 2024); Marshall v. U.S. Att'y
Gen., No. 24-CV-00191-PB-AJ, 2025 WL 1566878, at *6 (D.N.H. June
3, 2025); United States v. Worster, 765 F. Supp. 3d 112, 125
(D.R.I. 2025), reconsideration denied, No. 21-CR-111-JJM-PAS,
2025 WL 897705 (D.R.I. Mar. 24, 2025); United States v. Cruz-
Jimenez, No. CR 23-47 (ADC), 2025 WL 901600, *6-*7 (D.P.R. Mar.
25, 2025); United States v. Torres-Diaz, No. CR 23-410 (FAB),
2024 WL 4870562, at *1 (D.P.R. Nov. 22, 2024), report and
recommendation adopted, 762 F. Supp. 3d 143 (D.P.R. 2025);
United States v. Astacio-Mieses, No. CR 23-028 (ADC), 2024 WL
4304630, at *1 (D.P.R. Sept. 26, 2024), and the vast majority of
other circuit courts of appeals, see, e.g., United States v.
Hunt, 123 F.4th 697, 700 (4th Cir. 2024); United States v.
Jackson, 110 F.4th 1120, 1125 (8th Cir. May 9, 2025); United
States v. Duarte, No. 22-50048, 2025 WL 1352411, at *1, *4 (9th
Cir. May, 9, 2025); Vincent v. Bondi, 127 F.4th 1263, 1265-66
(10th Cir. 2025); United States v. Cole, No. 24-10878, 2025 WL
339894, at *1 (11th Cir. Jan. 30, 2025); cf. Range, 124 F.4th at
232 (invalidating the applicability of §922(g)(1) to nonviolent
offenders but not addressing its applicability to those who
previously committed violent felonies).  This Court declines to
depart from that clear trend of authority and thus concludes
that no Second Amendment violation has occurred here.

Because petitioner's assertion that his conviction under §922(g)(1) is unconstitutional under the Second Amendment is unavailing, his claims, by extension, that it violates the Fourteenth Amendment or that his counsel was ineffective for failing to challenge his conviction are equally unavailing. See United States v. Victoria, 876 F.2d 1009, 1013 (1st Cir. 1989) ("[R]aising meritless points . . . d[oes] not constitute ineffective assistance." (internal quotations omitted)); see also Omran v. United States, No. 1:14-CV-505-DBH, 2015 WL 570723, at *8 (D.N.H. Feb. 10, 2015) (specifying that an equal protection claim fails if a plaintiff "has not alleged a plausible claim that [d]efendants violated any of his constitutional rights"); Velazquez v. Hernandez, No. CIV.A 09-1692 GAG, 2010 WL 3420820, at *5 (D.P.R. Aug. 27, 2010), vacated and remanded on other grounds sub nom. Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103 (1st Cir. 2014) (similar).

For the same reason, petitioner is not entitled to a hearing, see David, 134 F.3d at 478 (holding that habeas petitioners who present insubstantial constitutional claims are unentitled to a hearing), and the Court also need not address the government's argument that petitioner's claims are procedurally barred for failure to raise them on direct appeal, see United States v. Theodore, No. CRIM 87-00301JLT, 2007 WL 1860015, at *1 (D. Mass. June 26, 2007) (reasoning that courts

- 16 -

"need not address" arguments that a petition is "procedurally barred" if it "fails on the merits" in any event). Petitioner's §2255 motion to vacate his sentence will therefore be denied and his petition will be dismissed.

### ORDER

For the foregoing reasons:

1) the motion of petitioner, Glenn Lacedra, to vacate his sentence (Docket No. 1) is **DENIED**;

2) the petition for writ of habeas corpus is **DISMISSED**; and

3) the hearing previously scheduled for Thursday, July 24, 2025, at 2:00 p.m., is hereby **CANCELLED**.

**So ordered.**

_Nathaniel M. Gorton_
Nathaniel M. Gorton
Senior United States District Judge

Dated:   July *16*, 2025